# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **WILSON ARDOIN** | * | **CIVIL ACTION NO. 06-1097** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Wilson Ardoin, born November 9, 1947, filed applications for disability insurance benefits and supplemental security income payments on March 18, 2004, alleging disability as of August 28, 2003, due to lower back, hip and leg problems, high blood pressure, arthritis, and depression.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1]Claimant previously filed an application for disability benefits, which was denied initially, on reconsideration, and by an Administrative Law Judge ("ALJ").  He filed a request for review, which was denied by the Appeals Council on January 28, 2004.  Claimant sought no further appeal.

Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dr. Patrick Gillespie dated May 29, 2003 to March 18, 2004**.  Claimant complained of low back pain, numbness between the toes, vertigo, sleepiness, and headaches.  (Tr. 96-100).  The  assessments were hypertension, chronic back pain and RSD.  Dr. Gillespie prescribed Panlor SS and Wellbutrin.

**(2) Records from University Medical Center ("UMC") dated September 19, 2003 to May 3, 2004**.  On September 19, 2003, claimant complained of low back pain into his thighs since being pinned by an 18-wheeler in 1994 or 1996.  (Tr. 132-33).  X-rays showed a transitional segment at the lumbosacral junction with four non-rib-bearing lumbar type vertebral bodies.  (Tr. 129).  The diagnoses were lumbar pain with radiculopathy and hypertension.  (Tr. 133).  He was prescribed Toradol.  (Tr. 134).

A CT scan dated October 23, 2003, showed a mild disc bulge at the lumbosacral junction, no focally herniated discs, no evidence of central spinal stenosis, and a transitional segment at the lumbosacral junction.  (Tr. 127-28).  The assessment was chronic back pain.  (Tr. 124).

2

On November 19, 2003, claimant complained of pain in his legs with burning. (Tr. 122). His hypertension was under fair control. The assessment was chronic pain. He was prescribed Neurontin.

On March 3, 2004, claimant complained of headaches, an inability to put weight on his left leg, intermittent numbness, dizziness, groin pain, and ear popping. (Tr. 112-13). An ECG showed sinus bradycardia with sinus arrhythmia. (Tr. 109, 115). The assessments were headache and chest pain. (Tr. 113).

On April 7, 2004, claimant complained of headaches, groin problems, chronic leg pain, and leg tingling. (Tr. 106-07). His hypertension was controlled. (Tr. 107). The assessment was back pain.

Claimant's hypertension and DJD were stable on May 3, 2004. (Tr. 103).

**(3) Consultative Examination by Dr. Christiane Eisele dated May 22, 2004**. Claimant complained of bilateral leg pain after being squeezed between an 18-wheeler and another large machine in 1994. (Tr. 137). He also complained of back pain and burning, groin pain, high blood pressure with frequent headaches, confusion with headaches, and a history of depression. His medications included Micardis, Wellbutrin, Arthrotec, Zyrtec, Neurontin, and Viagra.

On examination, claimant's blood pressure was 165/93.  (Tr. 138).  He ambulated well without difficulty.  He got on and off of the examination table, up and out of the chair, and dressed and undressed himself without difficulty.

Claimant's extremities had 2+ pulses with no edema, cyanosis, clubbing, swelling, redness, or atrophy.  His gait was normal without assistive device.  He had 5/5 strength in all extremities.  (Tr. 138-39).

Claimant's fine and gross manipulation and finger to thumb were normal.  (Tr. 138).  He had no atrophy or deformity in the upper extremities.  Straight leg raising was 85 supine and 90 sitting.  (Tr. 139).  Claimant was able to lie straight back on the table, walk on his heels and toes, and squat.  He had no varices or ulcerations.

Neurologically, claimant was alerted and oriented.  He had a normal affect.  He was able to follow simple directions; however, he did not have the educational level to do  a complete mini mental status examination.  He primarily appeared frustrated with his situation.

Claimant had normal sensation and proprioception throughout all extremities.  He had a very slight left-sided pronator drift, but a negative Romberg with no tremor or nystagmus.  Finger to nose was normal.  Cranial nerves were grossly intact.  Deep tendon reflexes were 2+ throughout.

Dr. Eisele's impression was that claimant had diffuse medical problems, including leg pain/burning, impotence, and apparently peripheral neuropathy of unknown etiology which was somewhat controlled with Neurontin.  He was able to sit, stand, walk, lift, hear, speak, and handle objects without difficulty.  Other than claimant's slight pronator drift, Dr. Eisele was unable to find any objective confirmation of claimant's complaints.

**(4) Records from UMC dated June 21, 2004 to May 19, 2005**.  An MRI dated June 21, 2004, showed a mild broad-based central disc bulge at L4-L5 and L5-S1, with no spinal stenosis or neural foraminal narrowing.  (Tr. 156B).

On January 26, 2005, claimant was seen for followup of hypertension and degenerative disc disease.  (Tr. 152).  He complained of headaches.  His blood pressure was 138/87.  He was doing fairly well.  (Tr. 153).  The impressions were hypertension under moderate control and DJD.  (Tr. 154).

A pulmonary function report dated April 27, 2005, showed a mild restrictive impairment.  (Tr. 148-51).

On May 24, 2005, claimant complained of pain to the back of the neck, legs, and lower back.  (Tr. 144).  He also complained of mild shortness of breath.  (Tr. 145).  Chest x-rays showed no acute pulmonary process.  (Tr. 143).

**(5) Records from Dr. Gillespie dated August 26, 2004 to September 29, 2005**. On August 26, 2004, claimant complained of fatigue, headaches, a confusion state, and hearing voices. (Tr. 163). His blood pressure was 108/70. The impression was hypotension, depression, and allergic rhinitis. He was prescribed Wellbutrin and Clarinex.

On July 29, 2005, claimant complained of left hand edema and pain. (Tr. 160). The assessment was arthritis and neck and back pain.

On September 29, 2005, claimant complained of left leg and neck pain. (Tr. 158). His blood pressure was 158/90. The impression was arthritis and neck and back pain.

**(6) Claimant's Administrative Hearing Testimony**. At the hearing on November 3, 2005, claimant was 57 years old. (Tr. 176). He stated that he was 5 feet 11 inches tall and weighed 192 pounds, which fluctuated. He had completed the fourth grade. (Tr. 177).

Claimant testified that he could read and write "[a] little bit." He stated that he could do arithmetic to get change when he bought something. He reported that he had worked as a yard foreman in the oil business and had managed his own store. (Tr. 178-79, 184).

As to complaints, claimant stated that he was unable to work because of leg weakness and groin problems.  (Tr. 180).  He also complained of depression, for which he was taking Wellbutrin.  (Tr. 182).  He reported that he had side effects from his medications, including memory loss and confusion.  (Tr. 182, 186).  He rated his pain as an eight or nine.  (Tr. 188).

Regarding activities, claimant testified that he was able to drive.  (Tr. 177).  He also cut the grass.  (Tr. 181).

**(7) The ALJ's Findings are Entitled to Deference**.  Claimant argues that the ALJ erred in assessing his residual functional capacity, resulting in an erroneous determination that he could perform his past work.  Specifically, he asserts that the ALJ "grossly understated" the severity of his back impairment.  (rec. doc. 8, p. 3). Additionally, he contends that the record indicates that he was functionally illiterate, and the ALJ should have ordered intellectual testing to determine his intelligence level.  (rec. doc. 8, p. 5).

As to the first argument, the ALJ found that claimant had a mild disc bulge at L5-S1, which impairment was severe, but not severe enough to meet or medically equal the listings in Appendix 1, Subpart P, App. 1.  (Tr. 15).  This finding is supported by the MRI dated June 21, 2004, confirming that claimant had a *mild* broad-based central disc bulge at L4-L5 and L5-S1, with *no* spinal stenosis or neural

foraminal narrowing.  (emphasis added).  (Tr. 156B).  Additionally, the record reflects that the consultative examiner, Dr. Eisele, was unable to find any objective confirmation of claimant's complaints, other than his slight pronator drift.  (Tr. 139).

To prove disability resulting from pain, an individual must establish a medically determinable impairment that is capable of producing pain.  *Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995).  Once a medical impairment is established, the subjective complaints of pain must be considered along with the medical evidence in determining the individual's work capacity.  *Id*.  Disabling pain must be constant, unremitting, wholly unresponsive to therapeutic treatment, and corroborated in part by objective medical testimony.  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).

In this case, the ALJ noted that claimant had been treated for complaints of bilateral leg and lower back pain after an injury.  (Tr. 16).  However, he observed that a CT scan dated October 23, 2003, showed a *mild* disc bulge at the lumbosacral junction, *no* focally herniated discs, *no* evidence of central spinal stenosis, and a transitional segment at the lumbosacral junction.  (emphasis added).  (Tr. 127-28).  He additionally noted that an MRI dated June 21, 2004, confirmed that claimant had a mild broad-based central disc bulge at L4-L5 and L5-S1, with no spinal stenosis or neural foraminal narrowing.  (Tr. 156B).  Further, he cited Dr. Eisele's conclusion

8

that claimant had no objective findings to confirm his complaints, other than his slight pronator drift. (Tr. 139). A claimant's subjective symptoms must be supported by objective medical evidence. *Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (citing *Anthony v. Sullivan*, 954 F.2d 289, 296 (5th Cir. 1992)).

Additionally, the record confirms that none of claimant's physicians had indicated that his impairments were disabling. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995) (substantial evidence supported ALJ's finding that claimant could perform a wide range of sedentary work where no physician who examined her pronounced her disabled). Thus, this argument lacks merit.

Next, claimant asserts that the ALJ failed to properly consider the side effects of his medications. (rec. doc. 8, p. 4; rec. doc. 10, p. 2). At the hearing, claimant complained that his medication caused memory loss and confusion. (Tr. 182). However, the record does not indicate that claimant reported these side effects to his physicians. *See Salazar v. Chater*, 1995 WL 783347, *5 (5th Cir. 1995) ("[i]t is logical to assume that if the claimant were suffering significantly from any side affects [sic], the claimant would have complained to his treating physician, yet he has not done so."). Additionally, the decision reflects that the ALJ specifically considered the effects of claimant's medications in evaluating his complaints. (Tr. 15, 17, 18). Thus, this argument lacks merit.

9

Finally, claimant argues that the ALJ should have sent him for a consultative examination to determine his intellectual functioning. (rec. doc. 8, p. 5; rec. doc. 10, pp. 3-4). Under some circumstances, a consultative examination is required to develop a full and fair record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id*. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

Here, the ALJ noted that claimant had a fourth grade education, could read and write a little, and could make change. (Tr. 17). Based on claimant's own description of his past work, the ALJ found that claimant could return to his past work as a grocery store stocker. (Tr. 19).

Despite claimant's allegations of "functional illiteracy," the record reflects that claimant was able to work in his grocery store from 1987 to 1993. (Tr. 67, 184).

Thus, he has not raised the suspicion necessary to require the ALJ to order a consultative examination in this case.  Accordingly, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT,**

**EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

Signed on  March 27, 2007, at Lafayette, Louisiana.

_____
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE